**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **THEODIS THOMAS, as Independent** | ) | |
| **Administrator of the Estate of** | ) | |
| **THADDEUS THOMAS, deceased,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **Case No.:_____** |
| | ) | |
| **v.** | ) | **Judge:_____** |
| | ) | |
| **COOK COUNTY SHERIFF,** | ) | **Magistrate:_____** |
| **THOMAS J. DART; CHARLOTTE SENTERS;** | ) | |
| **HIROKO GOODFRIEND and** | ) | |
| **COOK COUNTY,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **DEFENDANTS.** | ) | |

## <u>COMPLAINT</u>

Plaintiff, THEODIS THOMAS, as Independent Administrator of the Estate of

THADDEUS THOMAS, deceased, by his attorneys, Gardiner Koch Weisberg & Wrona,

complains against Defendants, SHERIFF OF COOK COUNTY, THOMAS J. DART;

CHARLOTTE SENTERS; HIROKO GOODFRIEND and COOK COUNTY, as follows:

### Introduction

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the

deprivation under color of law of THADDEUS THOMAS's rights as secured by the

United States Constitution and under the laws of the State of Illinois.

2.      Specifically, as a result of the Defendants' deliberate indifference to

THADDEUS THOMAS's safety and medical need, more fully described below,

THADDEUS THOMAS was denied his due process rights in violation of the Fourteenth

Amendment and subjected to tortious conduct while housed in the Cook County Jail

awaiting trial.

**Jurisdiction and Venue**

3.     This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

4.     Venue is proper under 28 U.S.C. § 1391(b).  All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within this district.

**The Parties**

5.     Plaintiff, THEODIS THOMAS, is the father of THADDEUS THOMAS and was duly appointed Independent Administrator of the Estate of Thaddeus Thomas on April 13, 2016 by the Circuit Court of Cook County, County Department, Probate Division. THEODIS THOMAS was at all relevant times a citizen of the United States and a resident of Cook County, Illinois.

6.     THADDEUS THOMAS was at all relevant times a citizen of the United States, a resident of Cook County, Illinois and a pretrial detainee housed at the Cook County Jail.

7.     On and prior to May 2, 2015 and all times relevant to the allegations in this complaint, HIROKO GOODFRIEND, a Licensed Clinical Social Worker, was employed at the Cook County Jail by the Cook County Health and Hospital System and/or the COOK COUNTY SHERIFF and was an agent of COOK COUNTY and/or the COOK COUNTY SHERIFF. At all relevant times relevant to this complaint, HIROKO GOODFRIEND was acting under color of law.

8.     On and prior to May 2, 2015 and all times relevant to the allegations in this complaint, CHARLOTTE SENTERS was employed at the Cook County Jail by the Cook County Health and Hospital System and/or the COOK COUNTY SHERIFF and was an

agent of COOK COUNTY and/or the COOK COUNTY SHERIFF. At all relevant times relevant to this complaint, CHARLOTTE SENTERS was acting under color of law.

9.     THOMAS J. DART was the COOK COUNTY SHERIFF at all times relevant to the allegations in this complaint.  The COOK COUNTY SHERIFF is the chief administrator of the Cook County Jail and is responsible for the supervision of operation at the Cook County Jail including the training and scheduling of correctional officers and other staff employed at the Cook County Jail, including HIROKO GOODFRIEND and CHARLOTTE SENTERS.  At all relevant times relevant to this complaint, the COOK COUNTY SHERIFF was acting under color of law.

10.    Defendant COOK COUNTY is an Illinois home rule unit of local government and provides the funding for the Cook County Health and Hospital System and for the COOK COUNTY SHERIFF.  Under Illinois law, 745 ILCS 10/9-102, Cook County is required to pay a judgment entered against its employees acting in their official capacity.

**Factual Allegations**

11.     THADDEUS THOMAS became a pretrial detainee at the Cook County Jail on August 7, 2014 and remained housed there as a pretrial detainee until his death on May 2, 2015.

12.    On October 10, 2014, THADDEUS THOMAS was seen at the Mental Health Infirmary at the Cook County Jail as a result of endorsing suicidal ideation and homicidal ideation. He reported that he had a history of bipolar disorder and had attempted to hang himself in 2012 at a juvenile detention facility.

13.    On October 12, 2014, THADDEUS THOMAS threatened to hang himself and was admitted to the Mental Health Clinic and placed in restraints.

14.    On October 13, 2014, THADDEUS THOMAS relayed to Steve Paschos, M.D. an active plan for suicide, indicating he would hang himself in his cell as soon as he got a chance. THADDEUS THOMAS was deemed a high risk for suicide, and as a result, he was placed in restraints and put on close observation.

15.    THADDEUS THOMAS remained in restraints and under close observation until October 14, 2014 when he was released to Outpatient Mental Health.

16.    On November 13, 2014, THADDEUS THOMAS jumped off the second floor tier in his housing unit, Division 9, because he experienced auditory verbal hallucinations telling him "to go skydiving." THADDEUS THOMAS also reported voices were telling him to kill security staff.  He was sent to Mt. Sinai Hospital for evaluation and there prescribed the antidepressants Depakote and Seroquel.  Upon his return to the Mental Health Infirmary, THADDEUS THOMAS expressed suicidal ideation and homicidal ideation indicating he would "go skydiving" again if returned to his housing unit.

17.    On November 14, 2014, after reevaluation, THADDEUS THOMAS was additionally prescribed the antipsychotic medication Olanzapine, and a plan was put in place to discharge him from the Mental Health Infirmary to Outpatient Mental Health.

18.    However, before he could be discharged, THADDEUS THOMAS flooded the bathroom in the group room in the Mental Health Infirmary and, as a result, was put in a safety smock and placed on close observation.

19.    Close observation and use of the safety smock were discontinued on November 17, 2014, and THADDEUS THOMAS was discharged from the Mental Health Infirmary to Outpatient Mental Health.

20.    On November 22, 2014, HIROKO GOODFRIEND saw THADDEUS THOMAS in a Division 10 holding cell. At that time, THADDEUS THOMAS requested to see the doctor, and HIROKO GOODFRIEND informed him that he already had a November 29, 2014 appointment with Mental Health Services and a December 3, 2015 appointment with psychiatry.

21.    On December 2, 2014, HIROKO GOODFRIEND saw THADDEUS THOMAS in a Division 10 holding cell for segregation clearance after THADDEUS THOMAS had a verbal altercation with an officer.  THADDEUS THOMAS was cleared for segregation.

22.    On December 5, 2014, HIROKO GOODFRIEND saw THADDEUS THOMAS in a Division 10 holding cell after he refused to lock up.  THADDEUS THOMAS sought to be sent to the Mental Health Clinic and to see Steve Paschos, M.D. HIROKO GOODFRIEND refused his request.

23.    On December 12, 2014, THADDEUS THOMAS was transferred to the Mental Health Clinic and placed in a safety smock after reporting he drank two ice packs in a suicide attempt, reporting he was experiencing auditory hallucinations and expressing suicidal ideations.

24.    After reevaluation on December 16, 2014, close observation and use of the safety smock were discontinued, and THADDEUS THOMAS was discharged to

Outpatient Mental Health. Also at his request, THADDEUS THOMAS's prescription for Olanzapine was discontinued at this time.

25.     On February 26, 2015, THADDEUS THOMAS indicated he was noncompliant with his antidepressant medications.

26.     On March 3, 2015, THADDEUS THOMAS withdrew his consent for the antidepressant Depakote.

27.     On March 6, 2015, THADDEUS THOMAS was brought to the Mental Health Clinic after stating that he wanted to jump off the second floor tier in his housing unit.  After evaluation, THADDEUS THOMAS was discharged on April 7, 2015.

28.     On March 24, 2015, HIROKO GOODFRIEND saw THADDEUS THOMAS in a Division 10 at the request of security because THADDEUS THOMAS said he needs psychiatric help and needed to speak with someone.  At that time, THADDEUS THOMAS told HIROKO GOODFRIEND "I know how to hang myself. We put a sheet on the chin, not neck. If it slips, it's bad."

29.     On March 27, 2015, HIROKO GOODFRIEND saw THADDEUS THOMAS in the Division 10 dispensary after jail staff indicated that THADDEUS THOMAS had attempted to hang himself in his housing unit. At that time, THADDEUS THOMAS told HIROKO GOODFRIEND that he would do it again if sent back to his cell.  THADDEUS THOMAS was admitted to the Mental Health Clinic and placed in safety smock.

30.     On March 29, 2015, after reevaluation, THADDEUS THOMAS was discharged but, Alma Ramic, M.D. opined that THADDEUS THOMAS would "most likely will have another suicide gesture due to preference of changing housing."

31.    On April 1, 2015, THADDEUS THOMAS loosely tied a bed sheet around his neck, but then denied suicidal intent.

32.    On April 6, 2015, THADDEUS THOMAS tied a bed sheet around his neck and the bed post and was about to sit down when security intervened.  THADDEUS THOMAS was taken to the Mental Health Clinic.

33.    After reevaluation by Steve Paschos, M.D. on April 7, 2015, THADDEUS THOMAS was discharged to Outpatient Mental Health.

34.    On April 9, 2015, THADDEUS THOMAS was taken to the Mental Health Clinic after threatening to hang himself with a bed sheet.

35.    On April 11, 2015, HIROKO GOODFRIEND attempt to see THADDEUS THOMAS in a Division 10 holding cell at the request of security. Upon her arrival, HIROKO GOODFRIEND found THADDEUS THOMAS masturbating.  HIROKO GOODFRIEND informed security and expressed an interest in pressing charges against THADDEUS THOMAS.

36.    On April 15, 2015, THADDEUS THOMAS was observed by a nurse wrapping a sheet around his neck and a lamp in his housing unit, Division 9.  He was admitted to the Mental Health Clinic, given Haldol and Lorazepam, placed on close observation and put in restraints.

37.    On April 17, 2015, Steve Paschos, M.D. increased the dosage of THADDEUS THOMAS's Mirtazapine and ordered THADDEUS THOMAS held over the weekend for observation. About this time THADDEUS THOMAS was diagnosed as having a mood disorder.

38.    On April 21, 2015, Steve Paschos, M.D. discharged THADDEUS THOMAS to Outpatient Mental Health.

39.    On May 1, 2015, at approximately 11:42 a.m. Elizabeth Jefferson, LPN reported that she was unable to deliver medication to THADDEUS THOMAS due to being unable to access his tier due to security issues.

40.    On May 2, 2015, THADDEUS THOMAS was housed in Division 10, 1A/Level 2, in a cell by himself.

41.    On or about May 2, 2015, THADDEUS THOMAS requested a "psych evaluation" though an "IAHI."

42.    On May 2, 2015 at approximately 1 a.m., THADDEUS THOMAS was seen by CHARLOTTE SENTERS.

43.    At that time, THADDEUS THOMAS expressed safety concerns stating that correctional officers intended to hurt him, he would to hurt himself before he let the correctional officers hurt him and he could not trust anyone.

44.    THADDEUS THOMAS asked CHARLOTTE SENTERS to move him to different housing.

45.    CHARLOTTE SENTERS had THADDEUS THOMAS returned to his current housing in Division 10.

46.    On May 2, 2015, THADDEUS THOMAS refused to take his 9:00 a.m. medications from Isiaka Adeniyi, RN.

47.    On May 2, 2015 at approximately 10:21 a.m., THADDEUS THOMAS was seen by HIROKO GOODFRIEND in response to his Health Services Request Form,

which indicated he was hearing voices and wanted to talk with someone because he was thinking about harming himself.

48.     In speaking to HIROKO GOODFRIEND, THADDEUS THOMAS stated that he was suicidal, that he no longer cared about anything and that only action would have any meaning.

49.     Further, THADDEUS THOMAS stated to HIROKO GOODFRIEND that his mother had recently been in the hospital and that he was concerned about the charges against him.

50.     At that time, THADDEUS THOMAS stated to HIROKO GOODFRIEND that he had not been compliant with his psychiatric medication for seven days.

51.     At that time, THADDEUS THOMAS requested HIROKO GOODFRIEND transfer him to the Mental Health Clinic so he could speak with Steve Paschos, M.D.

52.     HIROKO GOODFRIEND was familiar with THADDEUS THOMAS and took note of his past suicide attempts and gestures.

53.     HIROKO GOODFRIEND had THADDEUS THOMAS returned to his current housing in Division 10.

54.     On May 2, 2015, at approximately 2:11 p.m., THADDEUS THOMAS was discovered to have hung himself in his cell with a bed sheet.

55.     On May 2, 2015, at approximately 2:30 p.m., THADDEUS THOMAS was pronounced dead by the Chicago Fire Department.

56.     Between May 2 and 3, 2015, the Cook County Jail experienced a "sick out" with approximately 637 correctional officers calling in sick over four shifts.

57. The Kentucky Derby and the Mayweather/Pacquiao "Fight of the Century" were televised on May 2, 2015.

58. It is known to the COOK COUNTY SHERIFF and staff working at the Cook County Jail that higher than average number of correctional officers at the Cook County Jail call in sick on the day of and the day after major sporting events.

59. Due to the "sick out" on May 2, 2015, the Cook County Jail was placed on lockdown and fewer officers were available to observe and monitor detainees and inmates at the Cook County Jail, including THADDEUS THOMAS.


## Count I – 42 U.S.C. § 1983

### Deliberate Indifference to Serious Medical Needs

### CHARLOTTE SENTERS and HIROKO GOODFRIEND

60. Each paragraphs of this complaint is incorporated as if fully restated herein.

61. The misconduct in this Count was undertaken under the color of the policies and customs of the Cook County Jail as prescribed by the COOK COUNTY SHERIFF in the manner described more fully herein.

62. CHARLOTTE SENTERS and HIROKO GOODFRIEND were deliberately indifferent to THADDEUS THOMAS's need for psychiatric treatment and/or monitoring when they ignored his requests for psychiatric treatment on May 2, 2015.

63. CHARLOTTE SENTERS and HIROKO GOODFRIEND objectively knew from THADDEUS THOMAS's suicidal statements on May 2, 2015; their personal knowledge of his history of suicide attempts and gestures; his mental health and medical records and his noncompliance with his psychiatric medication that, on May 2, 2015,

there was a substantial and imminent risk that THADDEUS THOMAS would commit suicide, engage in a suicidal gesture and/or harm himself if he did not receive intervention.

64. Despite the subjective knowledge that there was a substantial and imminent risk that THADDEUS THOMAS would commit suicide and/or harm himself, CHARLOTTE SENTERS and HIROKO GOODFRIEND intentionally disregarded that risk by

    a. returning THADDEUS THOMAS to his cell without putting any precautions in place;

    b. not immediately referring THADDEUS THOMAS for psychiatric treatment;

    c. not transferring THADDEUS THOMAS to the Mental Health Clinic;

    d. not placing THADDEUS THOMAS on suicide watch; and/or

    e. not arranging for THADDEUS THOMAS to be continuously monitored.

65. Each of these acts and/or omissions by CHARLOTTE SENTERS and HIROKO GOODFRIEND demonstrate deliberate indifference to the medical needs of THADDEUS THOMAS and constitute a violation of THADDEUS THOMAS's constitutional rights.

## Count II – 42 U.S.C. § 1983

### *Monell* Claim

### COOK COUNTY SHERIFF, THOMAS J. DART

66. Each paragraph of this complaint is incorporated as if fully restated herein.

67. The COOK COUNTY SHERIFF is ultimately responsible for the administration of the Cook County Jail; is the final decision maker with regard to all policies, practices, and customs of the Cook County Jail; and is the final decision maker with regard to all policies, practices, customs for those employed at the Cook County Jail.

68. All of the constitutional violations described in this complaint as taken by those employed at the Cook County Jail, including *inter alia* those acts and omissions of CHARLOTTE SENTERS and HIROKO GOODFRIEND, were undertaken pursuant to policy, practice, or custom of the COOK COUNTY SHERIFF, in that:

    a. As a matter of policy, practice, or custom, the COOK COUNTY SHERIFF directly encouraged, and was thereby the moving force behind, the very type of constitutional violation at issue here by failing to adequately train, supervise, and control his employees and/or agents, such that his failure to do so manifests deliberate indifference.

    b. The policy, practice, and custom of the COOK COUNTY SHERIFF resulted in the constitutional violations at issue here by preventing detainees at the Cook County Jail from obtaining psychiatric treatment despite a substantial and imminent risk suicide and/or self harm in deliberate indifference to detainee medical needs.

    c. As a matter of policy, practice, or custom, the COOK COUNTY SHERIFF delegated evaluation of suicide risk to social workers and others rather than a psychologist or medical doctor specialized in psychiatry thereby manifesting deliberate indifference to the health and safety of detainees.

d. As a matter of policy, practice, or custom, the COOK COUNTY SHERIFF allowed detainees to remain in their ordinary housing assignments when detainees demonstrated a substantial and imminent risk suicide and/or self harm in deliberate indifference to detainee medical needs.

e. As a matter of policy, practice, or custom, the COOK COUNTY SHERIFF provided insufficient and inadequate staffing at the Cook County Jail to ensure that detainees with mental health issues were monitored frequently, and in compliance with Illinois law, to prevent self harm thereby manifesting deliberate indifference to the health and safety of detainees.

f. As a matter of policy, practice, or custom, the COOK COUNTY SHERIFF failed to have sufficient personnel to provide adequate 24-hour supervision of detainees pursuant to Ill Admin. Code tit. 20, § 701.20(a)(1).

g. As a matter of policy, practice, or custom, the COOK COUNTY SHERIFF failed to one provide one jail officer shall for each floor of the jail pursuant to Ill Admin. Code tit. 20, § 701.20(a)(4).

h. As a matter of policy, practice, or custom, the COOK COUNTY SHERIFF failed to provide sufficient jail officers such that personal observation of detainees, not including observation by a monitoring device, occurred at least once every 30 minutes pursuant to Ill Admin. Code tit. 20, § 701.130(a)(2.

i.  As a matter of policy, practice, or custom, the COOK COUNTY SHERIFF failed to provide sufficient jail officers such that personal observation of detainees, including THADDEUS THOMAS, who were suicidal or mentally disturbed or impaired received given appropriate care and supervision and checked more frequently than the standard 30-minute check pursuant to Ill Admin. Code tit. 20, § 701.140(c)(8).

69.    The policies, practices, and customs described in the foregoing paragraphs were consciously approved by the COOK COUNTY SHERIFF and were a proximate cause of the injuries suffered by and the death of THADDEUS THOMAS.

70.    On the basis of the foregoing, the COOK COUNTY SHERIFF has violated THADDEUS THOMAS's due process rights under the Fourteenth Amendment by enacting or approving the aforementioned policies, practices, and customs that, when followed by the COOK COUNTY SHERIFF's employees and agents, resulted in a deprivation of THADDEUS THOMAS's rights and is, thus, liable for his injuries.

**Count III – State Law Claim**

**Willful and Wanton Negligence – Survival**

**HIROKO GOODFRIEND and CHARLOTTE SENTERS**

71.    Each paragraph of this complaint is incorporated as if fully restated herein.

72.    CHARLOTTE SENTERS and HIROKO GOODFRIEND owed THADDEUS THOMAS a duty of reasonable care.

73.    THADDEUS THOMAS was entirely dependent upon CHARLOTTE SENTERS and HIROKO GOODFRIEND to gain access to psychiatric treatment.

74.    CHARLOTTE SENTERS and HIROKO GOODFRIEND acted with willful and wanton disregard for THADDEUS THOMAS's need for psychiatric treatment and/or monitoring when they ignored his requests for psychiatric treatment on May 2, 2015.

75.    CHARLOTTE SENTERS and HIROKO GOODFRIEND objectively knew from THADDEUS THOMAS's suicidal statements on May 2, 2015; their personal knowledge of his history of suicide attempts and gestures; his mental health and medical records and his noncompliance with his psychiatric medication that, on May 2, 2015, there was a substantial and imminent risk that THADDEUS THOMAS would commit suicide, engage in a suicidal gesture and/or harm himself if he did not receive intervention.

76.    Despite the subjective knowledge that there was a substantial and imminent risk that THADDEUS THOMAS would commit suicide and/or harm himself, CHARLOTTE SENTERS and HIROKO GOODFRIEND intentionally disregarded that risk by

a.   returning   THADDEUS THOMAS to his cell without putting any precautions in place;

b.   not immediately referring THADDEUS THOMAS for psychiatric treatment;

c.   not transferring THADDEUS THOMAS to the Mental Health Clinic;

d.   not placing THADDEUS THOMAS on suicide watch; and/or

e.   not arranging for THADDEUS THOMAS to be continuously monitored.

77.     Each of these acts and/or omissions by CHARLOTTE SENTERS and HIROKO GOODFRIEND was willful and wanton and demonstrated deliberate indifference to the medical needs of THADDEUS THOMAS.

78.     As a proximate result of one or more of the aforesaid willful and wanton acts and/or omissions of Defendants CHARLOTTE SENTERS and/or HIROKO GOODFRIEND, THADDEUS THOMAS was injured and sustained pecuniary damages before his death on May 2, 2015, including but not limited to conscious pain and suffering and mental anguish, subjecting the Defendants to liability pursuant to 755 ILCS 5/27-6, a/k/a the Survival Statute.

## Count IV – State Law Claim

### Willful and Wanton Negligence – Wrongful Death

### HIROKO GOODFRIEND and CHARLOTTE SENTERS

79.     Each paragraph of this complaint is incorporated as if fully restated herein.

80.     CHARLOTTE SENTERS and HIROKO GOODFRIEND owed THADDEUS THOMAS a duty of reasonable care.

81.     THADDEUS THOMAS was entirely dependent upon CHARLOTTE SENTERS and HIROKO GOODFRIEND to gain access to the psychiatric treatment.

82.     CHARLOTTE SENTERS and HIROKO GOODFRIEND acted with willful and wanton disregard for THADDEUS THOMAS's need for psychiatric treatment and/or monitoring when they ignored his requests for psychiatric treatment on May 2, 2015.

83.     CHARLOTTE SENTERS and HIROKO GOODFRIEND objectively knew from THADDEUS THOMAS's suicidal statements on May 2, 2015; their personal

knowledge of his history of suicide attempts and gestures; his mental health and medical records and his noncompliance with his psychiatric medication that, on May 2, 2015, there was a substantial and imminent risk that THADDEUS THOMAS would commit suicide, engage in a suicidal gesture and/or harm himself if he did not receive intervention.

84.     Despite the subjective knowledge that there was a substantial and imminent risk that THADDEUS THOMAS would commit suicide and/or harm himself, CHARLOTTE SENTERS and HIROKO GOODFRIEND intentionally disregarded that risk by

      a.  returning  THADDEUS THOMAS to his cell without putting any precautions in place;

      b.  not immediately referring THADDEUS THOMAS for psychiatric treatment;

      c.  not transferring THADDEUS THOMAS to the Mental Health Clinic;

      d.  not placing THADDEUS THOMAS on suicide watch; and/or

      e.  not arranging for THADDEUS THOMAS to be continuously monitored.

85.     Each of these acts and/or omissions by CHARLOTTE SENTERS and HIROKO GOODFRIEND was willful and wanton and demonstrated deliberate indifference to the medical needs of THADDEUS THOMAS.

86.     As a proximate result of one or more of the aforesaid willful and wanton acts and/or omissions of Defendants CHARLOTTE SENTERS and/or HIROKO GOODFRIEND, THADDEUS THOMAS died on May 2, 2015.

87.     THADDEUS THOMAS left surviving his next of kin, each of whom has sustained a general pecuniary loss and a loss of society and loss of companionship, love and affection of THADDEUS THOMAS, subjecting the Defendants to liability pursuant to 740 ILCS 180/1 *et.seq.*, a/k/a the Wrongful Death Act.

**Count V – State Law Claim**

**Intentional Infliction of Emotional Distress - Survival**

**HIROKO GOODFRIEND and CHARLOTTE SENTERS**

88.     Each paragraph of this complaint is incorporated as if fully restated herein.

89.     Despite the subjective knowledge that there was a substantial and imminent risk that THADDEUS THOMAS would commit suicide and/or harm himself, CHARLOTTE SENTERS and HIROKO GOODFRIEND engaged in extreme and outrageous conduct by

a.  returning    THADDEUS THOMAS to his cell without putting any precautions in place;

b.  not immediately referring THADDEUS THOMAS for psychiatric treatment;

c.  not transferring THADDEUS THOMAS to the Mental Health Clinic;

d.  not placing THADDEUS THOMAS on suicide watch; and/or

e.  not arranging for THADDEUS THOMAS to be continuously monitored.

90.    CHARLOTTE SENTERS and HIROKO GOODFRIEND knew and
intended that each of these extreme and outrageous acts would inflict sever emotional
distress upon THADDEUS THOMAS.

91.    As a proximate result of one or more of the aforesaid extreme and
outrageous acts of Defendants CHARLOTTE SENTERS and/or HIROKO
GOODFRIEND, THADDEUS THOMAS was injured and sustained pecuniary damages
before his death on May 2, 2015, subjecting the Defendants to liability pursuant to 755
ILCS 5/27-6, a/k/a the Survival Statute.

**Count VI – State Law Claim**

**Intentional Infliction of Emotional Distress – Wrongful Death**

**HIROKO GOODFRIEND and CHARLOTTE SENTERS**

92.    Each paragraph of this complaint is incorporated as if fully restated herein.

93.    Despite the subjective knowledge that there was a substantial and imminent
risk that THADDEUS THOMAS would commit suicide and/or harm himself,
CHARLOTTE SENTERS and HIROKO GOODFRIEND engaged in extreme and
outrageous conduct by

    a.  returning    THADDEUS  THOMAS  to  his  cell  without  putting  any
        precautions in place;

    b.  not  immediately  referring  THADDEUS  THOMAS  for  psychiatric
        treatment;

    c.  not transferring THADDEUS THOMAS to the Mental Health Clinic;

    d.  not placing THADDEUS THOMAS on suicide watch; and/or

    e.  not arranging for THADDEUS THOMAS to be continuously monitored.

94.     CHARLOTTE SENTERS and HIROKO GOODFRIEND knew and intended that each of these extreme and outrageous acts would inflict sever emotional distress upon THADDEUS THOMAS.

95.     One or more of the preceding extreme and outrageous acts resulted in THADDEUS THOMAS enduring sever emotional distress which was a major contributing factor and a  proximate cause of THADDEUS THOMAS's suicide and death on May 2, 2015.

96.     THADDEUS THOMAS left surviving his next of kin, each of whom has sustained a general pecuniary loss and a loss of society and loss of companionship, love and affection of THADDEUS THOMAS, subjecting the Defendants to liability pursuant to 740 ILCS 180/1 *et.seq.*, a/k/a the Wrongful Death Act.

## Count VI – State Law Claim

## Indemnification Claim against Cook County

### COOK COUNTY

97.     Each paragraph of this complaint is incorporated as if restated fully herein.

98.     Illinois law, 745 ILCS 10/9-102, provides that Cook County is directed to pay any tort judgment for compensatory damages entered against its employees acting in their official capacity.

**WHEREFORE**, Plaintiff THEODIS THOMAS, as Independent Administrator of the Estate of THADDEUS THOMAS, deceased, respectfully requests that this court enter judgment in his favor and against Defendants, COOK COUNTY SHERIFF, THOMAS J.

DART; CHARLOTTE SENTERS; HIROKO GOODFRIEND and COOK COUNTY awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against Defendants in their individual capacity, as well as any other relief for Plaintiff that this court deems just and appropriate.

**Jury Demand**

Plaintiff, THEODIS THOMAS, demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:


s/Micah Jon Hughes
One of Plaintiff's Attorneys

Thomas G. Gardiner (6180243)
Barry C. Owen (6283684)
Micah Jon Hughes (6306202)
Gardiner Koch Weisberg & Wrona
53 W. Jackson Blvd., Suite 950
Chicago, IL 60604
tgardiner@gkwwlaw.com
bowen@gkwwlaw.com
mhughes@gkwwlaw.com
Phone: 312-362-0000
Fax: 312-362-0440